## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

THOMAS S. GINN                                                                    PETITIONER
Reg. #22135-045

VS.                                    2:15CV00026 JTR

C V RIVERA, Warden,
Warden, FCC - Forrest City Low                                                    RESPONDENT

## MEMORANDUM ORDER

### I. Background

On December 21, 2015, the Court entered a lengthy Order outlining the relevant facts, legal issues, and missing information that required further development in this habeas action.[1] *Doc. 18*. On January 19, 2016, Respondent filed a Supplemental Response. *Doc. 21*. On February 19, 2016, the Court entered an Order that again directed Respondent to provide the missing facts necessary to support one of the crucial assertions in the Supplemental Response. *Doc. 23*. On February 26, 2016, Respondent filed a Second Supplemental Response that finally provided these facts. *Doc. 24*. Thus, the Court is now in a position to reach and decide the merits of Ginn's habeas claims.

---

[1] For the sake of brevity, the Court will not restate any of that previous analysis. *Doc. 18*.

Ginn makes two alternative arguments to support his claim that his federal sentence must be credited with significant periods of "prior state custody" that he served both before and after the imposition of his federal sentence. First, Ginn asserts that, because he was granted bond on the two state drug charges, on January 20, 2010, the State of Missouri relinquished state primary jurisdiction over him on that date and he became a federal prisoner based on a federal detainer, which was the *sole basis* for his subsequent detention. Because he was in *federal primary jurisdiction*, on and after January 20, 2010, he argues that all of the time he later spent in federal and state custody must be credited against his federal sentence.

On January 26, 2010, Ginn was scheduled to appear in federal court for his Initial Appearance on federal charges. On that date, the USMS made it clear that it *disagreed* with Ginn's analysis of his custodial status by using a Writ of Habeas Corpus Ad Prosequendum to take custody of Ginn and transport him to federal court for his Initial Appearance. Such a writ is only used by the USMS to "borrow" a prisoner who is in *state primary jurisdiction*. When such a writ is used, the prisoner remains under state primary jurisdiction throughout the time he is in federal custody.[2]

After Ginn's Initial Appearance on the federal charges, on January 26, 2010, the USMS detained Ginn at the Caldwell County Detention Center for

---

[2] When the United States obtains "physical custody of [a prisoner in state primary jurisdiction] based upon the writ of habeas corpus ad prosequendum," the transfer of "physical control" over the prisoner does not "terminate" the state's primary jurisdiction. *Elwell v. Fisher*, 716 F.3d 477, 482 (8th Cir. 2013).

approximately eighteen months, and then transferred him to the Buchanan County Jail, where he remained for about three months. Ginn claims that, because he was a federal prisoner, on and after January 20, 2010, the BOP must grant him a *nunc pro tunc* designation crediting his federal sentence with all of the time he spent: (1) in USMS custody in the Buchanan County Jail, from January 20, 2010, through January 26, 2010 (6 days); (2) in USMS custody in the Caldwell County Detention Center, from January 26, 2010, through September 8, 2011 (590 days); (3) in the Buchanan County Jail, between September 8, 2011 and December 16, 2011 (99 days); and (4) in the Missouri Department of Corrections, between December 16, 2011 and September 13, 2013 (637 days), serving two concurrent five-year state sentences for drug convictions, *and* a state sentence for violating his parole.

Second, Ginn argues that, regardless of his "custodial status," on an after January 20, 2010, *none* of the 590 days he spent in the Caldwell County Detention Center were ever credited against *any* of his state sentences. As a result, he claims that he is entitled to have his federal sentence credited with *at least* those 590 days.

For the reasons discussed below, the Court concludes that Ginn's habeas claims have no merit.

## II. Discussion

### A. Primary Jurisdiction and the Commencement of Ginn's Federal Sentence

Ginn argues that, on January 20, 2010, when he made bond on the two state drug charges, the State of Missouri relinquished primary jurisdiction over him to the United States.[3] This meant, when his federal sentence was imposed on September 1, 2011: (1) he had been in federal primary jurisdiction for almost twenty months; and (2) his federal sentence should have "commenced" on that date.[4] Ginn contends that the BOP should have given him credit on his federal sentence for those twenty months, and calculated his federal sentence as commencing on September 1, 2011 — not September 13, 2013, the date he was paroled from his sentences in the Missouri Department of Corrections and remanded to the custody of the USMS to begin serving his federal sentence. Ginn raised both of those alleged errors in his request for a *nunc pro tunc* designation, which the BOP *denied*. *If* Ginn's analysis of his incarceration status, on and after

---

[3] "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). "Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: (1) release on bail, (2) dismissal of charges, (3) parole, or (4) expiration of sentence." *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013) (*quoting Cole*, 416 F.3d at 897). When a prisoner is in primary state custody, and is transferred to the physical custody of federal authorities, pursuant to a writ of habeas corpus ad prosequendum, he remains subject to the state's "primary jurisdiction" and is temporarily "on loan" to federal authorities for purposes of his federal prosecution. *Elwell*, 716 F.3d at 482. This is so even when the prisoner remains in federal custody after the entry of an Order of Detention. *See Davis v. Sneizek*, 403 Fed. Appx. 738, 740–41 (3d Cir. 2010); *Richardson v. Outlaw*, 2011 WL 671997, at *1 n.5 (E.D. Ark. Feb. 17, 2011).

[4] Under 18 § 3585(a), a defendant's federal sentence "commences" when he "is received in custody awaiting transportation to ... the official detention facility at which the sentence is to be served." Importantly, a federal sentence generally commences "when the United States takes *primary jurisdiction* and a prisoner is presented to serve his federal sentence, *not* when the United States merely takes physical custody of a prisoner who is subject to another sovereign's primary jurisdiction." *Elwell*, 716 F.3d at 481 (emphasis added).

4

January 20, 2010, is correct he is entitled to immediate release from the BOP, because he has flattened his federal sentence.

From the outset, Respondent has argued that, when Ginn made bond on the state drug charges, on January 20, 2010, the State of Missouri did *not* relinquish its primary jurisdiction over him because there was an active state detainer based on a warrant for Ginn's arrest for violating parole. However, despite repeated requests by the Court, Respondent failed to provide *any evidence* of that state detainer.[5]

In its Second Supplemental Response, Respondent *finally* has produced documents establishing that, in fact, the state parole violation warrant *was lodged as a detainer with the Buchanan County Sheriff on November 6, 2009*. According to the February 14, 2016 email from Pam Rogers, the Missouri Parole Board's custodian of records, a 2013 fire destroyed the "district file" containing all of the original signed documents in Ginn's parole violation case. *Doc. 24-3 at 2*. After the Missouri Parole Board recently advised the BOP of these facts, the BOP contacted the Buchanan County Sheriff's Department and requested the production

---

[5] In its previous Orders, the Court *repeatedly* directed Respondent to provide *facts* to establish that the state parole violation warrant was lodged as a detainer against Ginn *prior to* his January 20, 2010 bond hearing on the state drug charges. Until filing Respondent's Second Supplemental Response, on February 26, 2016, his counsel refused to provide the Court with those facts.
 The state parole violation arrest warrant initially produced by Respondent was unsigned and bore no indicia of being lodged as a detainer. Moreover, Ginn produced a February 13, 2015 letter, written by the "I.D. and Records" division of the Buchanan County Sheriff's Department, stating that he was "release [sic] on bond on 1-20-2010 on our case ["09BU-CR02848" the state drug possession case]. Subject was held 01-20-2010 to 01-26-2010 on federal hold." *Doc. 16 at 9*. Additionally, a "Jail Inmate Disposition Form" reflects that, on January 20, 2010, Ginn was "RELEASED ON PERSONAL RECOGNIZANCE BOND" on the state drug charges. *Doc. 16 at 10*. These documents all *strongly suggested* that the state parole violation warrant was *not* lodged as a detainer with the Buchanan County Sheriff prior to January 20, 2010. This is what made the "missing facts" so crucial to the Court's proper resolution of Ginn's habeas claims.

of *its copy* of the original fully-executed November 6, 2009 state parole violation warrant that was filed as a detainer. *Doc. 24-2 at 2-3; doc. 24-3 at 2*. The Buchanan County Sheriff's Department was able to locate and produce the requested document, which bears the signature of Earl Anderson, the "District 1 St. Joseph" parole officer who issued the warrant, on both the "issued by" and "detainer filed by" signature lines. *Id.* Moreover, this copy of the parole violation warrant has a fax machine header indicating that it was sent from the "Dist.1 SJCSC [St. Joseph Community Supervision Center]" of the Parole Board on November 6, 2009 at 3:21 p.m. *Id. This is consistent with a computer Parole Board "warrant inquiry" which states that the state parole violation warrant was issued at 3:10 p.m. on November 6, 2009, with the "Detainer Filed By . . . ANDERSON EARL . . . Place Detained BUCHANAN COUNTY SHERIFF'S DEPARTMENT . . . Return Available Y . . . Arrest Date 11/01/2009."*[6] *Doc. 24-1 at 3*.

These facts now explain why the USMS *correctly* used a Writ of Habeas Corpus Ad Prosequendum to transport Ginn from the Buchanan County Jail to federal court for his Initial Appearance on the federal charges. It also explains why, at Ginn's January 26, 2010 Initial Appearance, United States Magistrate Judge

---

[6] A computer-archived Parole Board "Field Violation Report" indicates that Earl Anderson interviewed Ginn at the Buchanan County Jail on October 9, 2009, and recommended revocation. *Doc. 24-1 at 5-10*. Another "Field Violation report" reflects that, on November 30, 2009, Parole Board Hearing Officer Kelley Smyth conducted a preliminary hearing at the Buchanan County Jail and found that there was probable cause to believe that Ginn committed the alleged parole violations. *Doc. 24-1 at 11-17*.

6

John T. Maughmer *correctly* ruled that bond was *moot* on the federal charges because Ginn was "technically in custody on the [state] parole violation warrant;" *i.e.*, Judge Maughmer had been made aware of the parole violation warrant that had been lodged as a detainer on November 6, 2009. This *mooted* the question of federal bond because Ginn was in *state primary jurisdiction* when he appeared for his Initial Appearance on the federal charges. In other words, even if Judge Maughmer had granted bond on the federal charges, the USMS would have returned Ginn to the Buchanan County Jail to await the outcome of his parole violation proceeding.[7]

These facts also make it clear that the February 13, 2015 letter from the "I.D. and Records" division of the Buchanan County Sheriff's Department is *incomplete* and *misleading*. While the letter correctly notes that there was a "federal hold" on Ginn, as of January 20, 2010, when he made bond on the state drug charges, it fails to note the state parole violation warrant, which was lodged as a detainer on November 6, 2009. This caused the February 13, 2015 letter to create the *false*

---

[7] Importantly, after Ginn's federal sentencing on September 1, 2011, the USMS returned him to the Buchanan County Jail, and his prosecution on the state drug charges resumed. Ginn eventually pled guilty and was sentenced to two concurrent five-year sentences on the state drug charges. After Ginn began serving these sentences in the Missouri Department of Corrections, his parole was revoked on January 23, 2012. *Doc. 21-2 at 2*. Because Ginn was brought to the Missouri Department of Corrections on his sentences on the state drug charges, it obviated the need for the parole violation warrant, which was cancelled shortly before the revocation of his parole.
    Finally, Missouri law prohibits bond on a parole violation warrant. Mo. Rev. Stat. § 217.720.1 (2011) ("Pending hearing as hereinafter provided, upon any charge of violation, the offender shall remain in custody or incarcerated without consideration of bail.'). The state parole violation warrant is checked "no" bond. *Doc. 24-2 at 2*.

*impression* that, after Ginn made bond on the state charges, the only detainer was the "federal hold."

On January 26, 2010, the USMS properly "borrowed" Ginn from the State of Missouri for his initial appearance in federal court, pursuant to a Writ of Habeas Corpus Ad Prosequendum. The State of Missouri continued to exercise primary jurisdiction over Ginn based on its parole violation warrant, which was lodged with the Buchanan County Sheriff's Department on November 6, 2009.[8] Thus, the State of Missouri did *not* relinquish primary jurisdiction over Ginn until September 13, 2013, when he was paroled from the Missouri Department of Corrections, after serving his state sentences.

Finally, on September 1, 2001, Ginn was sentenced in federal court for possessing a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c). A sentence for that offense "shall [not] run concurrently with any other term of imprisonment imposed on the person[.]" *See* 18 U.S.C. § 924(c)(1)(D)(ii). Thus, Ginn's effort to obtain a *nunc pro tunc* designation is tantamount to asking

---

[8] These facts are analogous to those in *Wilson v. Spaulding*, 2015 WL 8781510 (M.D. Pa. Dec. 15, 2015). In that case, Wilson was arrested and detained by state authorities on a robbery charge while he was on state parole. The state parole board then lodged a detainer against Wilson. Before the USMS arrived to pick up Wilson on a federal indictment, pursuant to a writ of habeas corpus prosequendum, the state dismissed the robbery charge. Wilson was then detained by the USMS for the duration of his federal prosecution. After federal sentencing, the USMS returned Wilson to state authorities, and his parole was revoked and he began serving the state parole revocation sentence. The BOP did not "commence" Wilson's federal sentence until he had had been later paroled from the state penitentiary. In a § 2241 habeas action, Wilson argued that "federal authorities obtained primary jurisdiction over [him] when the state dismissed the armed robbery charges or when the Eastern District of Pennsylvania issued a writ of habeas corpus ad prosequendum." The Court rejected this argument, noting that "the state parole violation detainer remained in place and the state, thereby, maintained primary jurisdiction over [Wilson]."

the BOP to "retroactively" run his federal sentence concurrent with his state sentences — something that is *expressly prohibited* by § 924(c). *See Johnson v. Langford*, 2015 WL 5820973 (N.D. N.Y. Oct. 5, 2015) ("Section 924(c) mandates consecutive service of sentences, thus, the BOP did not abuse its authority in denying petitioner a *nunc pro tunc* designation because it had no authority to make such a designation, given the statutory language."); *Calhoun v. Stine*, 2008 W.L. 185841 (E.D. Ky. Jan. 18, 2008) ("the BOP is correct that pursuant to federal law, his mandatory 60-month sentence for violation of Section 924(c) may not run concurrently with any other state or federal sentence.") (*citing United States v. Gonzales*, 520 U.S. 1 (1997)).

Accordingly, the BOP correctly calculated the commencement date of Ginn's federal sentence, and did not abuse its discretion in denying him a *nunc pro tunc* designation seeking credit on his federal sentence for the time he spent in state custody. *See Fegans v. Norris*, 506 F.3d 1101 (8th Cir. 2007) (the BOP's decision to deny a *nunc pro tunc* designation is reviewed for an "abuse of the agency's substantial discretion").

### B.   Prior Custody Credit

Ginn makes the alternative argument that, regardless of his custodial status, on and after January 20, 2010, he still is entitled to an award of prior custody credits for the 590 days, from January 26, 2010 to September 8, 2011, that he was

detained by the USMS. According to Ginn, those 590 days were *not* credited against any of his state sentences.

Respondent counters with an affidavit from Jerline Deardeuff, an employee in the Missouri Department of Corrections Records Office.[9] She states that the 590 days, between January 26, 2010 and September 8, 2011, were credited as "time served" on the fifteen-year parole violation sentence which Ginn was under during that time period:

> Offender Ginn received "time served" for all 590 days for this sequence [the parole violation sentence]. This credit is determined by reviewing Sequence 2 [the parole violation sentence] on the MDOC's face sheet[.]
>
> The Department's records indicate that Offender Ginn was received by the MDOC on this sentence on September 20, 2001, released on parole on March 21, 2007 and returned as a parole violator on December 16, 2011. The Missouri Board of Probation and Parole did not add any abscond time to the offender's records and, therefore, all the time served under supervision was credited as "time served."[10]
>
> * * *
>
> For that sequence [the parole violation sentence], the entries following Non-Credit Time indicating "Inst: 0 Parole: 0 Probation: 0" means that there was no time from when he was received by MDOC (9/20/2001) that was not calculated as "time served". This is further demonstrated by looking at the "Calculation Start: 09/20/2001" and "Max Rel Date: 09/19/2016" under Seq: 2 [the parole violation sentence]. This time period reflects 15 years between Offender Ginn's received date and maximum release date demonstrating that there was no abscond time added. Therefore, the 590 days between January 26, 2010 and September 8, 2011

---

[9] Deardeuff states that she: (1) worked in the Missouri Department of Corrections' Records Office for over thirty years; (2) was a "Records Officer III" from 1996 to 2011; and (3) has been the Missouri Department of Corrections "MULES Coordinator" since 2011. *Doc. 21-1 at 1*. She states that, as part of her duties, she had personal knowledge of Missouri Department of Corrections procedures for sentence calculation and the application of "prior time served." *Id.*

[10] Missouri law provides that, subject to certain exceptions, "time served on parole or conditional release shall be counted as time served under the sentence." Mo. Rev. Stat. § 217.720.3 (2011). Likewise, the Missouri Parole Board's policy manual states that time spent "under direct supervision is accredited as time served on the sentence." MISSOURI BOARD OF PROBATION AND PAROLE, *Rights of Offender to Preliminary and Revocation Hearing*, at p.3 (2012).

was credited as "time served" on Sequence 2 [the parole violation sentence] as these dates are inclusive.

*Doc. 21-1 at 2*.

As to the 186 days of "credit time" applied to the two concurrent five-year sentences on the state drug charges, Deardeuff states as follows:

> Offender Ginn was sentenced for these sequences [sequences "3" and "4" — the two five-year concurrent sentences on the state drug charges] on December 12, 2011 and received by the Department on December 16, 2011. Pursuant to Missouri Revised Statute Section 558.031, the Department applied 186 days of jail time credit to these sequences based on the jail time endorsement sent to the Department from the Buchanan County Sheriff's Department, attached as Exhibit B.
>
> \* \* \*
>
> Pursuant to section 558.031.2 RSMo, the Department can only apply jail time credit to a sentence if it is endorsed by the officer required to deliver the person to the Department. Based on my review, the Department properly credited the time endorsed for these sequences.

*Doc. 21-1 at 3*.

Deardeuff's Affidavit establishes that the 590 days, between January 26, 2010 and September 8, 2011, *were credited* by the State of Missouri as "time served" toward Ginn's *state parole violation sentence*. Accordingly, Ginn's argument that he is entitled to federal credit for that time is in direct conflict with "the express bar on double credit found in 18 U.S.C. § 3585(b)."[11] *Elwell*, 716

---

[11] Importantly, 18 U.S.C. § 3585(b) allows for prior custody credit for time spent in official detention before a federal sentence commences, but *not* for time that has been credited against another sentence. Thus, the statute prohibits "double counting," *i.e.* prior custody credit toward time on a sentence that has already been credited to another sentence.

In his Petition, Ginn cites the "*Willis* credits" exception to the double-counting bar in § 3585(b), named for the Fifth Circuit's decision in *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971). The Eighth Circuit recognized the theory of *Willis* credits in *United States v. Haney*, 711 F.2d 113, 114–15 (8th Cir. 1983). *Willis* credits only

F.3d at 484; *see also United States v. Wilson*, 503 U.S. 329, 337 (1992) (in enacting § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time").

### III. Conclusion

IT IS THEREFORE ORDERED THAT the 28 U.S.C. § 2241 Petition for a Writ of Habeas Corpus is DENIED, and the case is dismissed, with prejudice.

DATED this 11th day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

apply "[w]here a prisoner is subject to a federal sentence and a state sentence that run concurrently, and the federal sentence will run longer than the state sentence." *Everett v. Ives*, 2012 WL 2179097 (S.D. Ky. 2012). In those narrow circumstances, the BOP will credit the prisoner's federal sentence for "time spent in non-federal pre-sentence custody during which the inmate is denied bail because of a federal detainer." *See Davis v. Schultz*, 2010 WL 5392649, *3 (D. N.J. 2010). In this case, *none* of the perquisites for *Willis* credits are present. First, Ginn's state and federal sentences could not have run concurrently as a matter of law. *See* 18 U.S.C. § 924(c)(1)(D)(ii). Second, Ginn was not denied state bond because of a federal detainer. As explained earlier, the state parole violation was lodged as a detainer against Ginn on November 6, 2009, several months *before* he made bond on the state drug charges.